**In the Matter of the Arbitration Between Herbert SOBEL, Petitioner-Appellee,**
**and**
**HERTZ, WARNER & CO., Respondent-Appellant.**

**No. 37, Docket 72-1366.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1972.

Decided Nov. 28, 1972.

Mark F. Hughes, New York City (Willkie, Farr & Gallagher, Jack David, New York City, on the brief), for respondent-appellant.

Francis E. Lake, Jr., New York City (Spear & Hill, James D. Mollica, New York City, on the brief), for appellee.

Milbank, Tweed, Hadley & McCloy, Andrew J. Connick, Kenneth A. Perko, Jr., New York City, for amicus curiae The New York Stock Exchange, Inc.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

This is an interlocutory appeal from an order of the United States District Court for the Southern District of New York, Milton Pollack, J., that remanded an arbitration proceeding to the arbitrators to fulfill their "obligation to furnish some explanation of the ultimate findings embodied in their decision." 338 F.Supp. 287, 299 (1971). We hold that in the circumstances of this case the arbitrators have no such obligation to explain their award, and we reverse the order of the district court.

## I

The arbitration that led to this appeal was first requested in November 1967 by appellee Herbert Sobel, who was a customer of appellant Hertz, Warner & Co., a stock brokerage firm and a member of the New York Stock Exchange.[1] As a customer, Sobel had the right under Article VIII of the Constitution of the New York Stock Exchange to demand arbitration of any controversy he might have with a member firm growing out of its "business."[2] Briefly, Sobel claimed that between December 1965 and March 1966 he had purchased 10,200 shares of the common stock of Hercules Galion Products, Inc., upon the recommendation of his long-time broker, Edward Wetzel, and Michael Geier, both then employed by Hertz, Warner, and that Wetzel and Geier had made fraudulent misstatements and omissions of material facts on which Sobel had relied to his detriment. As their employer, Hertz, Warner was, according to Sobel, liable for the damages he had suffered.[3] Sobel continued to hold his Hercules shares until Hertz, Warner demanded, in connection with the arbitration, that they be sold to fix damages. This was done in May 1968, and Sobel thereafter claimed a direct loss of about $34,000.[4]

In 1970, both parties signed a formal submission to arbitration pursuant to the provisions of the Stock Exchange Constitution and the rules of the Board of Governors. Under the Constitution, Sobel's claim was heard by a panel consisting of two persons "engaged in the securities business" and three not so engaged. The panel held two hearings at which it heard the testimony of three witnesses and received documentary evidence. At the hearings, of which there is a full transcript, both sides were ably represented by counsel.

In May 1971, the panel issued the following decision:

We, the undersigned, being the arbitrators selected to hear and determine a matter in controversy between the above-mentioned claimant and respondents set forth in a submission to arbitration signed by the parties on April 6, 1970 and April 10, 1970 respectively;

And having heard and considered the proofs of the parties, have decided and determined that the claim of the claimant be and hereby is in all respects dismissed;

That the costs, $240.00, be and hereby are assessed against the claimant.

After an unsuccessful request to the arbitrators for reconsideration, Sobel moved in the Southern District under 9 U.S.C. § 10 to vacate the arbitration award on the grounds that it had been "procured by undue means" and "that the Award is contrary to public policy, in that the arbitrators refused to make their Award in accordance with the applicable Federal Securities laws." Judge Pollack heard argument on the motion to vacate and concluded, in an exhaustive opinion, that he could not decide the question without "an indication, now wholly lacking from the record, of the basis on which the petitioner's claim was dismissed." 338 F.Supp. at 289. Holding that "a District Court is justified in requiring some statement of the facts the arbitrators found decisive," id. at 298, the judge remanded the controversy to the arbitrators for that purpose.

---

1. At the time of the events in question, the firm name was Hertz, Neumark & Warner.

2. Article VIII provided, in relevant part:
   Sec. 1. Any controversy . . . between a non-member and a . . . member firm . . . arising out of the business of such . . . member firm, . . . shall, at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the constitution and the rules of the Board of Governors.

3. Sobel's claim also included damages for the purchase of stock of another company. That aspect of the arbitration is not before us.

4. Sobel's total claimed loss—including interest paid on his margin account and loss of the use of capital—was $70,986.

Thereafter, he certified as an interlocutory appeal under 28 U.S.C. § 1292(b) the question whether his action was proper, and we permitted the appeal.

## II

Although Sobel's claims before the arbitrators rested on state statutory law and common law fraud concepts, as well as on federal securities acts, only the last are significant on this appeal. The district judge was clearly disturbed by Sobel's claim that the arbitrators must have ignored the prohibitions of sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l(2),77q (a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. The judge's opinion emphasized that Wetzel and Geier had been indicted in 1967—not long after the transactions complained of by Sobel—for conspiring to create market activity in the Hercules shares and to induce the purchase of the security by others, and that in 1971 Wetzel had pleaded guilty to the conspiracy charge and Geier had been found guilty of that and other counts after a jury trial. Sobel argued to the district court that unless the arbitrators explained their decision, there was no way of telling whether it was in "manifest disregard" of the provisions of the securities acts. The quotation is from Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which—oddly enough, in the context of Sobel's use of it here—stands primarily for the proposition that certain kinds of claims cannot be forced to arbitration despite a pre-dispute agreement to arbitrate. Wilko v. Swan held that an agreement to arbitrate future controversies was an impermissible waiver of the plaintiff-customer's right to have his claim of securities act violations heard in court. In the course of its opinion, however, the Court also said:

> Power to vacate an award is limited. While it may be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would "constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," that failure would need to be made clearly to appear. In unrestricted submissions, such as the present margin agreements envisage, the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation. [Emphasis added; footnotes omitted.]

Id. at 436–437, 74 S.Ct. at 187. The district judge agreed with Sobel that unless the arbitrators in this case stated the basis of their decision, the judge could not determine whether it was in "manifest disregard" of the law.

The first issue before us is what is the issue before us. In one portion of his memorandum opinion certifying an interlocutory appeal, the district judge described the question as

> whether an arbitration award in a case involving federal securities law standards which fails to provide some indication of the basis of the arbitration panel's decision may be set aside and resubmitted to the arbitration panel pursuant to 9 U.S.C. §§ 10(d) and (e), . . . .
>
> . . . .

338 F.Supp. at 301. From this, Sobel argues that Judge Pollack's order merely requires a clarification from the arbitrators when the court finds no indication of the basis of the decision and that Judge Pollack's decision does not require arbitrators to write opinions in the first instance. Such a ruling, says Sobel, is not at all unusual. The latter part of the argument puzzles us. It does not make any real difference whether an arbitrator is ordered to write an opinion in the first instance or in the second instance. The issue is whether the requirement is proper in either case. As to the point that the judge sought only "clarification," if this version of the question were correct we doubt whether the appeal would have been certified by the district judge or accepted by this

court. Sobel's description of the narrow effect of Judge Pollack's order is at variance with other portions of both his original opinion and his supplemental memorandum. In the latter, id. at 299, the judge phrased the question in the manner set forth in the first paragraph of this opinion. And, in the judge's earlier opinion before certifying the interlocutory appeal, he characterized the arbitrators' decision several times as inadequate because lacking an explanation of its basis. E. g., id. at 289, 296. Moreover, whatever may be the power of a court to require clarification of an arbitration award, on the ample record in this case "clarification" can only mean setting forth the reasons for decision. Under these circumstances, we believe that the issue before us is whether the arbitrators here are required to disclose the reasoning underlying their award.

The question so phrased, of course, is still a narrow one. We are not asked to decide whether arbitration was an inappropriate forum here in the first place. Cf. American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2d Cir. 1968); Fallick v. Kehr, 369 F.2d 899 (2d Cir. 1966). Neither party questions the arbitrability of Sobel's claims under the securities acts. See, e. g., Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F. 2d 838, 841–843 (2d Cir. 1971) (non-member firm seeks arbitration under Exchange rules with member firm); Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245–246 (3d Cir. 1968) (investor's voluntary submission of existing dispute to arbitration is valid and waives judicial remedy). Cf. Coenen v. R. W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir., cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972) (arbitration between member firms of dispute arising before plaintiff became member of Exchange). Nor must we determine all the circumstances in which a court may vacate an arbitrator's award.

■■ Nonetheless, the extent of an arbitrator's obligation to explain his award is necessarily related to the scope of judicial review of it. That issue, insofar as it leads to attempts to define "manifest disregard," is particularly troublesome. See, e. g., San Martine Compania de Navegacion v. Saguenay Terminals Ltd., 293 F.2d 796, 801 & n. 4 (9th Cir. 1961). It is a truism that an arbitration award will not be vacated for a mistaken interpretation of law. See, e. g., Wilko v. Swan, *supra,* 346 U.S. at 436–437, 74 S.Ct. 182, 98 L.Ed. 168; Burchell v. Marsh, 58 U.S. (17 How.) 344, 349–350, 15 L.Ed. 96 (1855); Office of Supply, Government of the Republic of South Korea v. New York Navigation Co., 469 F.2d 377, 379–380 (2d Cir. 1972). But if the arbitrators simply ignore the applicable law, the literal application of a "manifest disregard" standard should presumably compel vacation of the award. The problem is how a court is to be made aware of the erring conduct of the arbitrators. Obviously, a requirement that arbitrators explain their reasoning in every case would help to uncover egregious failures to apply the law to an arbitrated dispute. But such a rule would undermine the very purpose of arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement. The sacrifice that arbitration entails in terms of legal precision is recognized, e. g., Bernhardt v. Polygraphic Co., 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956), and is implicitly accepted in the initial assumption that certain disputes are arbitrable. See, e. g., Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 389–390 (2d Cir. 1972). Given that acceptance, the primary consideration for the courts must be that the system operate expeditiously as well as fairly.

■ Presumably based upon the foregoing considerations, the Supreme Court has made it clear that there is no general requirement that arbitrators explain the reasons for their award. In Wilko v. Swan, *supra,* just before the language quoted above at page 1213 the Court pointed out that an award by arbitrators

"may be made without explanation of their reasons and without a complete record of their proceedings . . . ." 346 U.S. at 436, 74 S.Ct. at 187. This statement is especially significant because Mr. Justice Frankfurter in dissent made exactly the opposite point.[5] A little over two years later, the Court observed that "Arbitrators . . . need not give their reasons for their results. . . ." Bernhardt v. Polygraphic Co., *supra,* 350 U.S. at 203, 76 S.Ct. at 276. These statements were, of course, known to the district judge; he even quoted them in his opinion. The argument, then, must be that there is something about this particular case that justifies the extraordinary requirement of the district court's order. We fail to see what that is. There was a complete transcript here of the arbitration proceeding. The arbitrators—and the district court—also had the benefit of an extremely detailed submission to arbitration, including Sobel's Statement of Claim and Hertz, Warner's Reply, excellent memoranda of law and summations of counsel, all of which indicate a number of theories upon which the arbitrators may have decided.[6] Cf. Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969). It is true that claims under the securities acts are frequently complicated, although those made here seem less so than usual. And the same public interest that led to the enactment of the securities acts makes it desirable that such claims be decided correctly. But there is also a public interest, manifested in the United States Arbitration Act, 9 U.S.C. § 1 et seq., in the proper functioning of the arbitral process. It would be destructive of that process if we approved the district judge's requirement here that the arbitrators give reasons for their decision. Arbitration may not always be the speedy and economical remedy its admirers claim it is—this case is proof enough of that. But forcing arbitrators to explain their award even when grounds for it can be gleaned from the record will unjustifiably diminish whatever efficiency the process now achieves.[7]

5. 346 U.S. at 440, 74 S.Ct. at 189:

> Arbitrators may not disregard the law. Specifically they are, as Chief Judge Swan pointed out, "bound to decide in accordance with the provisions of section 12(2)." On this we are all agreed. It is suggested, however, that there is no effective way of assuring obedience by the arbitrators to the governing law. But since their failure to observe this law "would . . . constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," 201 F.2d 439, 445, appropriate means for judicial scrutiny must be *implied, in the form of some record or opinion, however informal, whereby such compliance will appear, or want of it will upset the award.* [Emphasis added.]

6. E. g., the representations to Sobel may have been true when made, or Hertz, Warner may have exercised reasonable supervision over its employees and not had reason to know of their fraudulent activities. Cf. Kamen & Co. v. Paul H. Aschkar & Co., 382 F.2d 689 (9th Cir. 1967), cert. denied, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968). We do not imply any view as to the validity of the theories underlying such possible grounds for the award. But reliance by the arbitrators on such theories would not provide a basis for vacating the award.

7. The New York Stock Exchange in an amicus brief suggests that in the context now before us such a requirement may put an end to arbitration altogether. The district court noted that the Exchange was not required to arbitrate non-member disputes. 338 F.Supp. at 296 n. 25. The implied suggestion was, as the amicus brief points out, that if the Exchange is unable to act with the formality thought desirable by the district judge, it should decline to hear such disputes. The Exchange notes that its arbitrators dispose of hundreds of disputes a year and that if written decisions were required the system would be seriously delayed. Thus, it concludes that a decision not to afford arbitration procedures "may, to some extent, outline the only practical course for the Exchange," Amicus Brief at 4, despite the encouragement by the Securities and Exchange Commission of informal procedures for settling non-member disputes. See 2 S.E.C., Reports of Special Study of Securities Markets 559–61 (1963). But cf. Ellenbogen, English Arbitration Practice, 17 Law & Contemp.Prob. 656,

Sobel cites a number of cases in support of the district court order. Courts have, on occasion, remanded awards to arbitrators for clarification, but they generally have done so to find out whether an issue has already been decided in arbitration rather than to discover whether the arbitrators had good reasons for their award. E. g., Galt v. Libbey-Owens-Ford Glass Co., 397 F.2d 439 (7th Cir.), cert. denied, 393 U.S. 925, 89 S.Ct. 258, 21 L.Ed.2d 262 (1968) (arbitrators report on remand that payment clause was not covered by arbitration provision, so district court reserves payment clause issues for itself); La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569 (3d Cir. 1967) (resubmission to arbitrators to determine if their award of money to defendant took into consideration prior payments by plaintiff, who sues to recover excess above amount awarded). Such decisions do not support a requirement that the arbitrators in this case explain their award. Sobel also relies on Granite Worsted Mills, Inc. v. Aaronson, Cowen, Ltd., 25 N.Y.2d 451, 306 N.Y.S.2d 934, 255 N.E. 2d 168 (1969), but in that 4–3 decision there was no record of the proceedings before the arbitrator to indicate a possible basis for his failure to apply a damage limitation clause. Apart from this distinction, we find most persuasive Judge Breitel's dissent, joined by Chief Judge Fuld and Judge Jasen, reasoning that if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed. See also Lentine v. Fundaro, 29 N.Y.2d 382, 328 N.Y.S.2d 418, 278 N.E. 2d 633 (1972).

In short, we believe that the district court erred in remanding the arbitration proceeding to the arbitrators. We do not agree with its conclusion that "the present state of the record is not sufficient to justify final determination of the issues petitioner has raised." 338 F.Supp. at 289. Those issues are wheth-

er the arbitration award was procured by "undue means," 9 U.S.C. § 10(a), or is void as against public policy. Both parties have urged us to decide those questions. While we are tempted to do so in order to bring this litigation to an end, orderly administration suggests that the district court should rule upon them first.

Case remanded for further proceedings consistent with this opinion.

668, 678 (1952) (favorable appraisal of English system, which provides for ju-

dicial determination of questions of law at instance of arbitrator or parties).