In the Matter of the Arbitration between Edward M. SIEGEL, Petitioner-Appellee,

v.

The TITAN INDUSTRIAL CORPORATION and Jerome A. Siegel, Respondents-Appellants.

No. 310, Docket 85–7576.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1985.

Decided Dec. 23, 1985.

As Amended on Denial of Rehearing March 6, 1986.

Harold S. Lynton (Shea & Gould, New York City, of counsel) for respondents-appellants.

Pamela Jarvis, (Fried, Frank, Harris, Shriver & Jacobson, of counsel) New York City, for petitioner-appellee.

Before FRIENDLY, MANSFIELD, and PRATT, Circuit Judges.

PER CURIAM:

Respondents The Titan Industrial Corporation ("Titan") and Jerome Siegel appeal from a final order of the United States District Court for the Southern District of New York confirming an arbitrator's award that set a value of $13,877,263 on the shares of Titan stock held by petitioner Edward Siegel. Respondents argue that the award should be vacated because the arbitrators failed to apply generally accepted accounting principles as required by the agreement of the parties and, therefore, acted in "manifest disregard" of the law. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). Alternatively, respondents ask that the award be remanded to the arbitrators to provide them with an opportunity to reveal the basis for their calculations. We agree that where, as here, an arbitrator reaches a result that is apparently based upon precise mathematical calculations it is desirable that the calculations be memorialized in the award. We hold, however, that there is sufficient evidence to conclude here that the arbitrators did not act in manifest disregard of the law. Accordingly, we affirm.

## BACKGROUND

Of the 41 outstanding shares of Titan's class A common stock, petitioner Edward Siegel owned 20 and respondent Jerome Siegel owned 21. A shareholders' agreement provided that upon Edward's retirement Titan would have the right to buy all of his shares at book value, which was to be determined as of the last day of the quarterly period ending after Edward's retirement, and was to be arrived at initially by Titan's regularly engaged independent accountants. The value reached by the accountants was to be final, except that by giving written notice either party could raise objections, which then were to be resolved by arbitration.

Upon Edward's retirement in June 1982 Titan elected to purchase Edward's shares. In January 1983 Titan's accountants issued a report fixing the book value of Edward's shares at $1.69 million. When Edward's objections to that figure could not be resolved amicably, he demanded that the dispute over the proper value of his shares be arbitrated.

The three arbitrators, after reviewing almost 4,000 pages of testimony and the briefs of the parties, unanimously rendered a two-page award fixing the value of Edward's shares at $13,877,263. They did not reveal what testimony they credited in reaching their award nor did they indicate what calculations they made in reaching their conclusion.

On cross applications to confirm and vacate the award the district court rejected respondent's "manifest disregard" argument, declined an invitation to remand to the arbitrators for clarification of the calculations, and confirmed the award. This appeal followed.

## DISCUSSION

An arbitrator's award, although subject to limited judicial scrutiny, *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980), will not be confirmed if it is demonstrated that the arbitrator acted in "manifest disregard of the law". *Wilko v. Swan*, 346 U.S. at 436–37, 74 S.Ct. at 187–88. Precisely what the "manifest disregard" test requires is not yet clear. However, it does require "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law". *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.) (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir.1961)), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978). The erroneous application of rules of law is not a ground for vacating an arbitrator's award, *see, e.g., I/S Stavborg v. National Metal Convert-*

ers, Inc., 500 F.2d 424, 432 (2d Cir.1974), nor is the fact that an arbitrator erroneously decided the facts, *South East Atlantic Shipping, Ltd. v. Garnac Grain Co., Inc.,* 356 F.2d 189, 192 (2d Cir.1966). Manifest disregard of the law may be found, however, if the arbitrator "understood and correctly stated the law but proceeded to ignore it", *Bell Aerospace Company Division of Textron, Inc. v. Local 516,* 356 F.Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds,* 500 F.2d 921 (2d Cir.1974); *see also Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972).

Respondents argue that the arbitrators here manifestly disregarded the law by failing to apply generally accepted accounting principles ("GAAP"). The shareholders' agreement, from which the arbitrators derived their power, stated that the book value of Edward's shares was to be determined "in accordance with standard accounting practice." Both the arbitrators and the parties agreed that "standard accounting practice" referred to GAAP.

The particular accounting principle at issue here is the "Statement of Financial Accounting Standards No. 52" which governs the financial period in which losses on foreign currency forward exchange contracts must be recognized. As of the valuation date for Edward's shares, Titan had approximately $13 million of such losses. Proper application of standard 52 would have required recognition of this loss in the current period, *i.e.,* as of the valuation date of Edward's shares, unless it was demonstrated that any of the contracts at issue could be categorized as "hedges". A transaction is a "hedge" where an identified forward exchange contract is locked into an identified agreement to purchase or sell goods in the future.

Respondents argue that the arbitrators could not have possibly reached their award unless they failed to recognize the $13 million loss as of the valuation date of Edward's shares. As noted above, failure to recognize the loss could be justified under GAAP only if some or all of the contracts in question were "hedge" transac-

tions. But, according to respondents, there was no evidence to support a conclusion that any of the contracts at issue were "hedge" transactions. Therefore, they argue, the failure to recognize the losses as of the valuation date demonstrates a misapplication of standard 52. They further argue that this failure to apply standard 52 amounts to the requisite "manifest disregard of the law" and requires that the award be vacated.

Petitioner takes issue with respondents' assumption that the arbitrators necessarily failed to recognize the $13 million loss as of the valuation date in order to reach their award. In support of his version of how the arbitrators arrived at their decision, petitioner has supplied a detailed affidavit explaining that the arbitrators might have rejected the theory that any of the contracts were "hedge" transactions, and, therefore, properly recognized the loss as of the valuation date. Petitioner's affidavit points out, however, that the arbitrators might have taken into account certain favorable tax consequences of the recognized loss and thereby reached their award. Finally, petitioner argues that even if the arbitrators *did* misapply standard 52 such an error would amount to a mere error of law and not a "manifest disregard" of the law.

Respondents also claim that the arbitrators manifestly erred by failing to dilute Edward's proportionate ownership of Titan by including in their calculations outstanding shares of inferior classes of stock. Although Edward and Jerome were the sole holders of the 41 shares of class A stock, 10.17 shares referred to as classes B, C, and D common stock were issued to other individuals. Respondent therefore maintains that petitioner was entitled to 39.085% of Titan's book value, rather than the 48.78% respondents claim the arbitrators awarded.

Our evaluation of these opposing contentions is not helped by the form of the award. The arbitrators have provided no clue as to how they reached the precise result of $13,877,263—a number apparently

arrived at after a series of calculations. Although we have stated that "arbitrators may render a lump sum award without disclosing their rationale for it," we suggested at the same time that a court has the power to "inquire into the basis" of an award if it believes that the award was rendered "in 'manifest disregard' of the law" or if "the facts of the case fail to support it". *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985); *see Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir.1978).

Recognizing that if there is to be any meaningful judicial review, an arbitrator's award cannot be absolutely immune from scrutiny, courts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award, *see Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42, 45–46 (2d Cir.1985); *Americas Insurance Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir.1985); *Diapulse*, 626 F.2d at 1112 (2d Cir.1980); *Cleveland Paper Handlers and Sheet Straighteners Union, No. 11 v. E.W. Scripps Co.*, 681 F.2d 457, 460 (6th Cir. 1982) (per curiam); *Oil Chemical and Atomic Workers International Union v. Rohm & Haas Texas, Inc.*, 677 F.2d 492, 495 (5th Cir.1982) (per curiam), or to determine whether the arbitrator has in some way exceeded his powers, *Young Radiator Co. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 734 F.2d 321, 326 n. 5 (7th Cir.1984); *Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers*, 648 F.2d 462, 468 (7th Cir.1981).

Where, as here, an arbitrator's award appears to have been reached on the basis of a precise mathematical calculation, it is desirable, and in some cases may be necessary, to know the basis for the calculations underlying the award. A remand for clarification in such circumstances would not improperly require arbitrators to reveal their reasons, but would instead simply require them to fulfill their obligation to explain the award sufficiently to permit effective judicial review. *Sobel v. Hertz, War-*

*ner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972). Such a "limited review" of an arbitrator's award is "necessary if arbitration is to serve as a quick, inexpensive and informal means of private dispute resolution." *Koch Oil*, 751 F.2d at 554.

■ Even though this appeal might seem to present a suitable case for remand, we do not feel that a remand is necessary. Even if respondents are correct that the arbitrators calculated Edward's percentage ownership at 48.78%, no manifest error was committed in this respect. The agreement providing for the redemption of Edward's stock is silent as to how the different classes of stock affect percentage ownership and thus resolution of the issue required interpretation of ambiguous contractual provisions—a task well within the domain of the arbitrators.

■ Nor does the arbitrators' treatment of the currency losses provide a ground for remand. As the district judge noted, this case raised "complicated factual questions" regarding the proper characterization of the contracts at issue. The arbitrators' ultimate resolution of those questions was far from "non-controversial", and there has been enough evidence presented to suggest that the arbitrators correctly applied standard 52. Where "a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Kurt Orban Co.*, 573 F.2d at 740 (quoting *Sobel*, 469 F.2d at 1216); *see also Koch Oil*, 751 F.2d at 554. Here, as indicated above, such a ground was sufficiently demonstrated in the affidavit submitted to the district court. For example, the Gluck affidavit indicates that the arbitrators could have calculated the award in the following manner:

| | |
|---|---|
| Gross Book Value | $ 32,618,680 |
| Gross Currency Loss | 13,285,382 |
| Tax Benefits | 6,445,426 |
| Net Currency Loss | –6,839,956 |
| Net Book Value | $ 25,773,724 |
| Edward's share at 48.78% | $ 12,572,422 |
| Actual Award | $ 13,877,263 |

When Edward's claim of 9% interest from January 1, 1983 is added to the above calculation, the Gluck affidavit arrives at an amount that is within the range of the actual award.

Affirmed.