**Paul SCINTO, Plaintiff–Appellant,**

v.

**The LIFE INSURANCE COMPANY OF NORTH AMERICA and Connecticut General Life Insurance Co., Defendants–Appellees.**

No. 01–7165.

United States Court of Appeals, Second Circuit.

Oct. 3, 2001.

Paul Scinto, New Bern, NC, pro se.

Kevin J. Brennan, Dwyer & Brennan, New York, NY, for appellee.

Present McLAUGHLIN and POOLER, Circuit Judges.*

SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Paul Scinto, *pro se*, appeals from the judgment of the United States District Court for the Southern District of New York (Sand, *J.*) granting defendants' motion to confirm an arbitration decision finding Scinto not disabled under the terms of defendants' insurance policy. For the reasons given below, we affirm.

Scinto, represented by counsel below, brought suit against the Connecticut General Life Insurance Co. ("CG") and the Life Insurance Company of North America ("LINA"), alleging the insurers breached the disability contracts they had entered

* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York was originally assigned as a member of the panel, but recused himself prior to oral argument and did not participate in the appeal. The appeal is being determined by the remaining members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b); *Murray v. National Broadcasting Co.*, 35 F.3d 45, 46 (2d Cir.1994).

into with Scinto by denying his claims for disability benefits after July 1985. In October 1999, the parties entered into a stipulation directing arbitration on the "validity, extent [and] continuity of disability" as provided by the insurance policies at issue. The parties also stipulated the arbitration would be conducted before a single physician and the arbitrator would issue a written decision. The disability policies purchased by Scinto provided him with up to five years of disability payments if he became disabled under the policy's "regular occupation" standard, and continuing payments if Scinto remained disabled as defined under "standard occupation."

The arbitrator made a number of findings, including: (1) Scinto first became "disabled due to injuries to his thigh and knee from a gunshot 6/1/80;" (2) prior to becoming disabled Scinto worked as a microbiologist while pursuing a doctoral degree in microbiology; (3) after his disability, Scinto received benefits under the "regular operation" clause; (4) during that time period, Scinto served time in prison on federal drug charges; and (5) since his release from prison, Scinto had been under the care of a number of doctors who found him "totally and permanently disabled" and "suffering from significant depression, diabetes mellitus, osteoarthritis of the knees and shoulders, and hepatitis C." However, the arbitrator concluded Scinto was not disabled in February or March of 1985, the time when the policies were canceled, because when Scinto was arrested in November 1984, he was able to either conduct medical research or illegal drug activities, and thus could perform the duties of his regular job. The arbitrator also found Scinto was not disabled in July or August 1985, when he would have been eligible for benefits under the standard occupation definition. The arbitrator found that despite some evidence from prison medical records indicating Scinto was limited in his activities, the bulk of the evidence showed Scinto was not disabled at the time. The arbitrator concluded, "of Mr. Scinto's current major problems, only the orthopedic problems existed at that time and even now it has not been necessary to offer definitive treatment (i.e., total knee replacement) 20 + years after the injury took place."

Defendants moved for a district court order confirming the arbitration decision in August 2000. After oral argument, the district court granted the motion, finding nothing in the record "indicative of the type of manifest error that would warrant overturning an arbitration award." On appeal, Scinto primarily argues that the district court judgment should be vacated because the arbitrator exceeded his powers, or, alternatively, the arbitrator imperfectly executed his powers because he relied on an incorrect fact. Scinto argues he was not disabled by the gunshot wound to his thigh, as the arbitrator found. Rather, he contends he was disabled as the result of a fall in 1979, where he broke both legs; and by gunshot wounds to his chest, lung, stomach, liver, right arm and shoulder in 1980. Scinto also argues the arbitrator should have found him disabled because the New York State Higher Education Services Corp., the Social Security Administration and the Internal Revenue Service found him disabled. Defendants concede the arbitrator made an incorrect finding of fact in determining the cause of Scinto's disability, but argue the error is irrelevant because the arbitrator examined all the evidence and correctly focused on whether Scinto was disabled in 1985, not on the causes of Scinto's disability.

■ An arbitrator's decision is reviewed with "considerable deference." *N.Y. Tel. Co. v. Communications Workers of Am. Local 1100,* 256 F.3d 89, 91 (2d Cir.2001).

We review the district court's findings of fact for clear error, and its findings of law *de novo. Bermuda Container Line Ltd. v. Int'l Longshoremen's Assoc., AFL–CIO,* 192 F.3d 250, 255 (2d Cir.1999). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id.* (citation omitted). Under § 10 of the Federal Arbitration Act ("FAA"), an arbitration award may be vacated for fraudulent procurement; evident partiality by the arbitrator, refusal of arbitrators to hear pertinent and material evidence; arbitrators exceeding their powers; or arbitrators imperfectly executing their powers. 9 U.S.C. § 10. Further, an arbitration award may be modified or corrected in the case of an "evident" and "material" miscalculation of a figure, or misdescription of a person, thing or property. 9 U.S.C. § 11. Finally, we may vacate an arbitration award "if it is in manifest disregard of the law." *New York Tele.,* 256 F.3d at 91 (2d Cir. 2001) (internal citations and quotation marks omitted). An arbitrator's error in fact finding does not provide a grounds for reversal. *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.1960); *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892–93 (2d Cir.1985).

▮ Thus, even accepting the defendants' concession that the arbitrator erred in determining Scinto's original injury was caused by a gunshot wound to the thigh, the narrow standard of review prevents us from overturning the arbitrator's decision based on an a mistake of fact. *Amicizia,* 274 F.2d at 808; *Siegel,* 779 F.2d at 892–93. Nor is there evidence supporting reversal on any of the grounds provided for in the FAA. Finally, there is no evidence that the arbitrator imperfectly executed his powers.

We have examined the remainder of Scinto's arguments and we find them without merit.