06-1723-cv
Rich v. Spartis

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2007

Docket Nos. 06-1723-cv(L); 06-1814-cv(XAP)

Argued: September 18, 2007          Decided: February 8, 2008

_____

ELIZABETH H. RICH and DONALD RICH,

Plaintiff-Appellants,

v.

PHILLIP L. SPARTIS and AMY JEAN ELIAS,

Defendants-Appellees-Cross-Appellants,

SALOMON SMITH BARNEY, INC., FORMERLY KNOWN AS
CITIGROUP GLOBAL MARKETS, INC.,

Defendants-Appellees.

_____

Before:  MINER, CABRANES, and STRAUB, Circuit Judges.

Appeal and cross appeal from a judgment entered in the United States District Court for the Southern District of New York (Cote, J.) vacating NASD arbitration panel award of damages for brokerage account losses against individual stock brokers and their employer and confirming the panel's dismissal of the cross-claims of the brokers for indemnification from their employer, the District Court having determined, inter alia, that the claims for losses sustained by plaintiff in their brokerage account were released by a court order approving settlement of a class action.

Judgment vacated and remanded with instructions.

Judge Straub concurs in a separate opinion.

CULVER V. HALLIDAY (Kathryn V. Eberle, on the brief), Stoll, Keenon, & Ogden PLLC, Louisville, Kentucky, for Appellants.

SUSANNA BUERGEL (Eric S. Goldstein, on the brief), Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Appellees.

DAVID I. GREENBERGER, Liddle & Robinson, New York, New York, for Appellees-Cross-Appellants.

MINER, Circuit Judge:

Plaintiffs-appellants, Elizabeth H. Rich and her husband, Donald Rich (the "Riches"), appeal from a judgment entered in the United States District Court for the Southern District of New York (Cote J.) vacating an award made in their favor by an arbitration panel established under rules adopted by the National Association of Securities Dealers ("NASD"). See In re WorldCom Sec. Litig., No. 02-3288, 2006 WL 709101 (S.D.N.Y. Mar. 21, 2006). The award was made against defendant-appellee Solomon Smith Barney, Inc. ("SSB"), now known as Citigroup Global Markets, Inc. ("Citigroup"), and against Philip L. Spartis and Amy Jean Elias, stockbroker representatives employed by SSB. Id. at *1. Spartis and Elias cross appeal from the judgment insofar as it confirms the arbitration panel's dismissal of their cross claims for indemnity against Citigroup. The District Court determined, inter alia, that the arbitration award was solely for losses sustained by the Riches that were released by a court order approving settlement of a class action. See In re WorldCom Sec. Litig., 2006 WL 709101, at *1. Accordingly, the District Court concluded that "the award of damages to the Riches must be vacated on the ground that the arbitrators exceeded their authority when they granted damages to the Riches. . . . " Id. at *4. As to the arbitration panel's dismissal of the cross-claim, the District Court concluded that Spartis and Elias failed to show any basis for vacating the arbitration panel's decision. Id. We find that the District Court could not have determined

3

that the arbitration award relied solely on WorldCom losses based on the record before us. We remand to the District Court to order the arbitration panel to clarify the award.

**BACKGROUND**

The Riches are residents of Louisville, Kentucky. As a long-term employee of WorldCom, Inc. ("WorldCom"), Mrs. Rich was provided with stock options as part of her compensation. Beginning in 1998, employees of WorldCom desiring to exercise their stock options were required to do so through the Atlanta, Georgia office of SSB. On July 2, 1998, and again on July 17, 1999, Mrs. Rich exercised stock options and immediately sold the acquired shares. Thereafter, SSB proposed an "exercise and hold" Plan (the "Plan") for WorldCom employees. Through the Plan, the employees would exercise their options and hold the shares for later sale pending anticipated increases in share prices. By holding the shares long enough, the employee shareholders would be able to have the increase in value taxed at capital gain rates.

In August of 1999, the Riches subscribed to the Plan by opening an account with SSB. They allege that they were advised in all matters relating to their account by Mr. Spartis and Ms. Elias. On August 5, 1999, Mrs. Rich exercised options for 10,012 shares of WorldCom stock at $4.60 for 6,012 shares and $17.87 for 4,000 shares. The closing price for each share that day was $83.19. The Riches held their shares after financing the acquisition with funds borrowed from SSB by means of a margin

4

account.  On October 6, 1999, Mrs. Rich exercised options for 6,000 shares of WorldCom stock at an acquisition cost of $8.94 per share.  The closing price per share on that date was $70.87. The Riches again paid for the shares through the margin account that they had established and again held the acquired shares as they claim they were advised to do.

On August 7, 1999, Mrs. Rich sold 10,012 shares of WorldCom stock and used the proceeds to purchase 11,700 shares of Sprint, Inc. ("Sprint") on that date.  Allegedly, Mrs. Rich was advised that the "exercise and hold" strategy would be advanced by the Sprint purchase, since it was anticipated that Sprint would be merged into WorldCom.  On January 31, 2000, Mrs. Rich exercised options to purchase 11,514 shares of WorldCom at $5.82 per share. The closing price per share on that day was $45.94.  To finance this purchase, the Riches again used their margin account to borrow the necessary funds from SSB.  Mrs. Rich exercised options through the SSB Plan one more time.  On April 18, 2000, she exercised options for 13,500 shares of WorldCom at $9.00 per share, with the closing price on that day being $41.25 per share. This transaction also was financed through the margin account.

The Riches received margin calls in August and September of 2000 and responded with cash and securities, including liquidation of securities held in their account, to meet the calls.  They first liquidated their 11,700 shares of Sprint and then began to sell the WorldCom shares to meet the margin calls. The Riches sold a total of 12,450 shares of WorldCom between

September 13 and September 25, 2000.  On September 26, they directed the sale, pursuant to a stop-loss order, of the remaining 22,030 shares of WorldCom in their account.  The stock was sold that day for $25.50 per share.  The Riches paid SSB over $25,000 in brokerage commissions and nearly $100,000 in margin interest during the thirteen months they maintained their account at SSB.  The Riches saw their WorldCom stock fall from $83.00 to $25.50 per share during that period.  They saw the price of their Sprint stock fall from $64.00 per share on the date of purchase to $33.75 on the date of sale, August 11, 2000.  Attributing their losses to the investment advice provided by SSB and its registered representatives, Spartis and Elias, the Riches demanded arbitration of their claims for the losses sustained by filing a "Statement of claims" against SSB with NASD Dispute Resolution, Inc.  Named as respondents in the arbitration were SSB, Spartis, Elias, and three other employees of SSB who were dismissed as respondents prior to the arbitration award.

The Statement of claims was filed on June 19, 2002, and included, generally, the historical facts described above.  As claimants in the arbitration, the Riches sought compensation from the respondents for failing to advise them, inter alia, as to: the facts that would enable them to "adequately assess the risks of the SSB Option Plan"; the risks of drops in the stock prices of WorldCom and Sprint presented by the Plan; the risks posed by failing to diversify their stock holdings; the risks of utilizing a margin account; a suitable investment strategy other than the

6

SSB Option Plan; and the conflict of interest stemming from the relationship between WorldCom and SSB as underwriter, market maker, and employer of Telecommunications Analyst Jack Grubman. The Riches also charged SSB and the manager of the Atlanta office with failing to adequately supervise Spartis and Elias. Detailed bases for the Riches claims were set forth in six separate "Counts" of the Statement of claims. They included: (i) Lack of Suitability; (ii) Lack of Supervision; (iii) Dishonest and Unethical Practice; (iv) Breach of Fiduciary Duty; (v) Negligence; and (vi) Gross Negligence. Compensatory damages of $1,312,141.08 were claimed, along with punitive damages, attorneys' fees and costs, and interest.

Substantially denying the allegations made in the Statement of claims, SSB filed its Statement of Answer with Affirmative Defenses on September 6, 2002. A Statement of Answer with Motion to Dismiss and Cross-Claim, filed by Spartis and Elias on September 6, 2002, included affirmative defenses, denials of the allegations in the Statement of claims, an application for dismissal of the claim, and a request for indemnification relief from SSB. All parties concerned executed Uniform Submission Agreements submitting the Riches' claims to arbitration in accordance with the Rules of the NASD. On April 19, 2004, the NASD convened a three-person arbitration panel in Louisville, Kentucky. The panel, constituted according to NASD Rules, consisted of Robert P. Ross, Esq., designated "Public Arbitrator, Presiding Chair," Amelia F. Adams, Esq., designated "Public

7

Arbitrator," and Todd Parker Lowe, designated "Non-Public Arbitrator." Testimony was taken and various motions were made at hearings that were held from April 19 to April 22, 2004 and on December 13 and 14, 2004. Sworn as witnesses were Spartis; Elias; William Hobby and Michael Grace, employees of SSB; Mrs. Rich; Dr. Craig J. McCann, a securities consultant; and John Fazio, Senior Vice President of Citigroup.

On December 14, 2004, counsel for Spartis and Elias brought to the panel's attention the lack of any evidence that Mrs. Rich had opted out of the WorldCom Securities Class Action, a necessary element to succeed in her arbitration claim. See In re WorldCom Sec. Litig., 2006 WL 709101, at *1. The District Court had certified the plaintiff class in the WorldCom Securities litigation on October 24, 2003. See In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003). A Notice of Class Action was disseminated to the plaintiff class on December 11, 2003. The Citigroup defendants, including SSB, entered into a proposed class settlement with the lead plaintiff on or about July 1, 2004, and a Notice of Proposed Settlement was distributed to the class on August 2, 2004. The District Court in the Southern District of New York ultimately set September 1, 2004 as the firm date for potential class members to seek exclusion from the plaintiff class.

On November 12, 2004, approximately one month prior to the final session of the arbitration panel considering the claims of the Riches, the District Court issued its "Judgment Approving

8

Settlement and Dismissing Action Against the Citigroup Defendants" in the securities class action case. See In re WorldCom Sec. Litig., No. 02-cv-3288 (S.D.N.Y. Nov. 12, 2004). The judgment enjoined class members "from instituting, commencing or prosecuting, either directly or in any other capacity, any claim arising out of the matters giving rise to this Action." Id. at ¶ 10. "Released Claims" is defined in the Judgment to include:

> [A]ll claims . . . arising out of or relating to investments (including, but not limited to, purchases, sales, exercises, and decisions to hold) in securities issued by WorldCom, and/or in options or derivative instruments based in whole or in part on the value of securities issued by WorldCom . . ., including without limitation all claims arising out of or relating to any analyst research reports or other statements made or issued by the Citigroup Defendants concerning WorldCom . . . .

Id. at ¶6 (a). "Released Parties" was defined to include SSB as well as its former employees.

After hearing arguments on December 14, 2004 regarding the effect of the foregoing judgment on the arbitration proceeding, the Presiding Chair of the Arbitration Panel stated as follows:

> Here's my ruling: We'll go ahead, and we will finish this arbitration and we will reach a decision. I presume that the respondents can go to the court in the class action and say, "Here's the arbitrators' decision; hold it void, because she's a member of the class." That being so, we will attempt to reach our decision based upon, one, it not be void; and, two, it being void. So we will have — I'm thinking right now, we are going to reach a decision, and I'm thinking right now we will have two decisions. One as it relates to WorldCom and everything else in the account; one as it relates not to WorldCom and the class action suit, so that if they do go to void, there will be a remainder of the decision that remains valid.

9

The Arbitration Panel issued its Award on January 20, 2005, finding SSB, Spartis, and Elias jointly and severally liable to the Riches for $315,000 in compensatory damages, $63,000 in pre-judgment interest, $50,000 in attorneys' fees, and $20,000 in costs, with post-judgment interest to be paid at the rate of 12% per annum if the Award were not paid within 30 days. The Panel dismissed with prejudice the cross-claims of Spartis and Elias for indemnification. Although the Panel did not provide a statement of the reasoning behind its compensatory damages determination, it did include in its Award a Case Summary that included the following language: "Claimants alleged that Respondents gave them unsuitable investment advice to purchase WorldCom stock by means of a margin account with money borrowed from Salomon Smithy [sic] Barney, Inc. Claimants also alleged that Respondents never discussed the risks associated with the holding of the WorldCom shares."

By an action filed in the Circuit Court of the Commonwealth of Kentucky, Jefferson County, on January 31, 2005, the Riches sought confirmation of the Award. On February 7, 2005 the action thereafter was removed to the United States District Court for the Western District of Kentucky at the behest of Spartis and Elias. On February 2, 2005, while the action to confirm was pending in federal court in Kentucky, counsel for Spartis and Elias, by letter to Judge Cote of the Southern District of New York, who had directed the entry of judgment approving the settlement in the WorldCom Class Securities Action, advanced the

10

argument that the judgment barred the enforcement of the Arbitration Award and requested the court to schedule a conference.  In response, the District Court in New York on February 9, 2004, ordered the Riches to show cause "why they should not be enjoined from enforcing their NASD arbitration award against Mr. Spartis and Ms. Elias."  By letter dated February 11, 2005, Citigroup sought to join in the application made by Spartis and Elias.

At the show cause hearing held before the District Court on February 25, 2005, the Riches conceded that they should be enjoined from enforcing any portion of their Award that related to their investments in WorldCom securities.  Accordingly, the District Court, by Order dated March 3, 2005, enjoined the Riches "from seeking to enforce the Award with respect to all claims of every nature and description, known and unknown, arising out of or relating to investments (including, but not limited to, purchases, sales, exercises, and decisions to hold) in securities issued by WorldCom."  The injunction order included the following provision: "IT IS HEREBY . . . ORDERED that the arbitration panel that issued the award is not enjoined from clarifying whether any portion of the Award relates to claims not covered by the Rich Injunction."

It appears that the NASD provided the Panel with a copy of the foregoing order.  Upon application of Citigroup, and after receiving the submissions of the parties in connection with their quest for clarification as permitted by the District Court, the

11

Panel on March 15, 2005 issued, without explanation, a one-line decision "determin[ing] that the Motion for Clarification is denied."  Thereafter, the United States District Court for the Western District of Kentucky, where the action to confirm the Award remained pending, transferred the action to the Southern District of New York by Order dated April 12, 2005.  The Kentucky court, citing 28 U.S.C. § 1404, determined that the interest of justice and the convenience of parties would be served by the transfer because "the New York court could decide both issues of whether to confirm the award and whether confirmation violates the injunction.  It would be inconvenient and a waste of the parties' time to litigate these issues in two separate cases."

Spartis and Elias thereafter moved in the Southern District of New York to vacate the Arbitration Award in its entirety.  On March 21 2005, the District Court issued its Memorandum, Order and Opinion vacating the Award insofar as it provided for recovery of damages by the Riches and confirming the Award insofar as it denied the cross-claims of Spartis and Elias.  The District Court determined that the Award to the Riches was intended to compensate them only for losses arising out of the advice that Mrs. Rich exercise her options and hold the stock in WorldCom.  See In re WorldCom Sec. Litig., 2006 WL 709101, at *4. According to the District Court, that advice "was the focus of the claim, the evidence at the hearing, and the summation arguments of counsel."  Id.

Turning to the Award itself, the District Court found that

12

"[t]he award's own description of the claims focused exclusively on WorldCom and described no other stock." Id.  In the opinion of the District Court, the decision of the Arbitration Panel to issue just one Award, having recognized its power to issue two Awards, and then to decline to clarify the Award after the Arbitrators were informed that no recovery could be had for WorldCom losses, provided "further evidence that the entirety of the award was for WorldCom trading losses." Id.  The District Court concluded that "the award of damages to the Riches must be vacated on the ground that the arbitrators exceeded their authority when they granted damages to the Riches based on their WorldCom trading losses." Id.  In confirming the dismissal of the cross-claims of Spartis and Elias, the District Court concluded that, "[g]iven the strong presumption of regularity to which an arbitration award is entitled, Spartis and Elias have not shown that the Panel lacked authority to issue an award and that the dismissal of their cross-claim should be vacated." Id.

This timely appeal and cross-appeal from the judgment of the District Court followed.

**ANALYSIS**

On appeal, the Riches again acknowledge that they cannot recover for their losses in WorldCom, but they contend that other losses in their SSB account justify the Award made by the arbitration panel.  Although ultimately vacating the arbitration award in their favor, the District Court recognized that "as a theoretical matter, the losses sustained by the Riches were large

13

enough to permit the $315,000 to be attributed to non-WorldCom losses." Id. But there is more than a theoretical basis for seeing the Award as encompassing losses attributable to securities in the Riches' account other than WorldCom. For one thing, Dr. McCann, damages expert for the Riches, testified before the panel that his report, with exhibits showing the losses in the Riches' account, would enable the panel to separate the WorldCom losses from losses attributable to other securities. For another, Citigroup's expert, John Fazio, testified before the panel that losses in the Sprint transactions totalled $448,000. This sum equals the precise total of the panel's Award — $315,000 (compensatory damages) plus $63,000 (pre-judgment interest) plus $50,000 (attorneys' fees) plus $20,000 (costs).

The Riches are also aided by the general rule that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997). We have noted that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–307, creates a "strong presumption in favor of enforcing arbitration awards" and have gone so far as to say that courts have an "extremely limited" role in reviewing arbitration awards. Wall Street Assoc., L.P. v. Becker Paribas, Inc., 27 F.3d 845, 849 (2d Cir. 1994) (citations omitted). Put another way, "an arbitration award should be enforced, despite a court's

14

disagreement with it on the merits, if there is `a barely colorable justification for the outcome reached.'" Landy Michaels Realty Corp. v. Local 32B-32J Serv. Employees Int'l, 954 F.2d 794, 797 (2d Cir. 1992) (quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir. 1978)).

When an arbitration panel makes a lump sum award without further explanation, "courts generally will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators." Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (internal quotations omitted); see also, Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1214 (2d Cir. 1972) (stating that "there is no general requirement that arbitrators explain the reasons for their award.") The determination by the NASD panel in the case at bar is, essentially, a lump sum award even though the sum is broken down into component parts.

The Riches also are entitled to the benefit of the burden of proof that the FAA imposes upon SSB, Spartis, and Elias as challengers of the Award. See Wall Street Assoc., 27 F.3d at 848. According to the FAA, challenges to an arbitration award "upon the application of any party to the arbitration," are limited to the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

15

shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The District Court concluded that the arbitrators exceeded their powers by granting damages to the Riches for their WorldCom trading losses. In re WorldCom Sec. Litig., 2006 WL 709101, at *4. That conclusion, of course, is grounded in the finding that the Award encompassed only losses in WorldCom, any claim for such losses having been released by the WorldCom Securities Litigation Judgment. In addition to arguing on appeal that the District Court correctly determined that the arbitration panel exceeded its authority, SSB, Spartis, and Elias contend that the panel acted in manifest disregard of applicable law. Although "manifest disregard" is not included in § 10(a) of the FAA as a ground for vacating an arbitration award, we have noted that "if the arbitrators simply ignore the applicable law, the literal application of a `manifest disregard' standard should presumably compel vacation of the award." Sobel, 469 F.2d at 1214.

In the same vein, we have said that "where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of an explanation may reinforce the reviewing court's confidence that the arbitrators engaged in

16

manifest disregard." <u>Halligan v. Piper Jaffray, Inc.</u>, 148 F.3d 197, 204 (2d Cir. 1998); <u>see</u> <u>also</u> <u>NLRB v. Bristol Spring Mfg. Co.</u>, 579 F.2d 691, 704 (2d Cir. 1978). In a recent decision in which we affirmed a finding that a panel award was issued partially in manifest disregard of the law, we opined that "an arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate `both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case.'" <u>Porzig v. Dresdner, Kleinwort, Benson, N. Am., LLC</u>, 497 F.3d 133, 139 (2d Cir. 2007) (internal citations omitted).

We simply are not yet in a position to determine whether the Award of the NASD arbitration panel either exceeded its powers <u>or</u> was in manifest disregard of the law. And that is because of the confusion occasioned by the circumstances surrounding the delivery of the unexplained lump sum award in this case. Although, as has been shown, an arbitration panel may render a lump sum award without explaining its reasons, the unique situation presented here dictates that the Award be clarified. All parties agree that the Riches cannot recover for their WorldCom trading losses, but it is not clear whether those losses are reflected in all, part, or none of the Award. What is missing is an assessment by the arbitration panel sufficient to enable us to determine the validity of the Award in this unusual case. The confusion in the Award arises from the actions of the

17

panel itself.

Before the Award was made, and on the last day of the arbitration panel hearing, the WorldCom Securities Litigation Judgment releasing all claims against SSB and its employees was brought to the attention of the panel. Two of the panel members, including the Presiding Chair, apparently are lawyers. Confronted with the judgment, however, the Presiding Chair failed to recognize the force of the Judgment and ruled that the panel would "go ahead, and . . . finish this arbitration and . . . reach a decision." The Chair "presume[d] that [SSB, Spartis, and Elias] can go to the court in the class action and say" that the arbitrators' decision is void. The Chair went on to say that the panel would "attempt to reach our decision based upon, one, it not be void; and two, it being void." By the foregoing, the panel, speaking through its Chair, seemed to leave to the district court the decision as to whether the Award would be barred by the WorldCom judgment.

Continuing with his ruminations, the Chair then introduced further confusion into his Ruling by speaking in terms of two decisions by the panel as follows:

I'm thinking right now we will have two decisions. One as it relates to WorldCom and everything else in the account; one as it relates not to WorldCom and the class action suit, so that if they do go to void, there will be a remainder of the decision that remains valid.

Despite the "thinking" of the Chair, the Award was made in terms of one, unexplained lump sum. While it is true, as noted by the District Court, that only WorldCom was mentioned in the panel

18

decision, that mention was made only in the context of the Case Summary discussing the contentions of the parties. However, the Summary of the contentions of the parties clearly was not complete, since the Statement of claims, as well as testimony at the hearing, referred to trading losses in Sprint.

Evidence that the parties were confused by the Award is found in the application by Citigroup to the panel for clarification of the Award and the submissions of the parties in connection therewith. Although the District Court found that the denial of the motion without explanation, combined with the two-decision comments of the Presiding Chair, demonstrated that the entirety of the Award represented WorldCom trading losses, see In re WorldCom Sec. Litig., 2006 WL 709101, at *4, these findings also support the proposition that the Award was not for WorldCom losses or not for WorldCom losses alone.

Ample authority supports our conclusion that the District Court should remand this case to the arbitration panel for clarification. In Ottley v. Schwartzberg, 819 F.2d 373 (2d Cir. 1987), we declared that "[i]ndefinite, incomplete, or ambiguous awards are remanded 'so that the court will know exactly what it is being asked to enforce.'" 819 F.2d at 376 (quoting Am. Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985)). In ordering a remand for clarification here, we do not require the arbitrators to state their reasons, but only to explain their indefinite, incomplete, and ambiguous award in a way sufficient to allow effective judicial review. See Siegel v.

19

Titan Indus. Corp., 779 F.2d 891, 894 (2d Cir. 1985).  We emphasize that the difficulty here lies not alone in the fact that a lump sum has been awarded without explanation but in the unique circumstances of this case where, as recognized by the parties previously, it is impossible to tell what the lump sum is for.

Because the lack of clarity in the arbitration panel's award does not permit us at this time to determine whether the Award was issued in manifest disregard of the law, see Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 129-30, 134 (2d. Cir. 2003), or exceeded the powers of the arbitrators, see Siegal, 779 F.2d at 894, we will remand this case to the District Court with instructions to remand to the NASD arbitration panel for clarification of the Award.  See Colonial Penn Ins. Co. v. The Omaha Indemnity Co., 943 F.2d 327, 335 (3d Cir. 1991). Specifically, the panel should be ordered to specify whether the WorldCom trading losses suffered by the Riches are represented in all, part, or none of the lump-sum Award and, if part, the amount thereof.  We recognize that the District Court permitted the parties to seek clarification before it ruled on the motion to confirm but believe the better practice would have been, as we now require, to order rather than permit clarification by the NASD arbitration panel.  The District Court should then review the clarified award, reconsider its earlier decision in light thereof, and make such further determination as it may deem proper.  The foregoing is not intended to express any opinion as

20

to what that determination should be or as to the merits of the claims and cross-claims submitted to the arbitrators.

**CONCLUSION**

For the reasons set forth above, the judgment of the District Court is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion. In view of the foregoing, we do not rule on the challenges made by Spartis and Elias to the District Court's confirmation of the arbitration panel's denial and dismissal of their cross claims for indemnification. Under the procedure set forth in United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir. 1994), we direct that the mandate shall issue forthwith and that jurisdiction shall be restored to this Court upon a letter request from any party. Upon such a restoration of jurisdiction, the case is to be sent to this panel.

21

STRAUB, *Circuit Judge*, concurring:

I agree with the majority with respect to the disposition of this case. I write separately to emphasize that while our role in reviewing an arbitration award is extremely limited, this case presents the type of extraordinary circumstances that warrant remand.

The majority reasons that remand is required here because "the lack of clarity in the arbitration panel's award does not permit us at this time to determine whether the Award was issued in manifest disregard of the law or exceeded the powers of the arbitrators." (internal citations omitted). Our caselaw suggests that such "lack of clarity" should result in upholding the award. We have held that even if it is "probable" that a panel based its award on legally erroneous grounds, the award should be upheld so long as there is a "plausible" legal basis for the award. See Duferco Int'l. Steel. v. T. Klaveness Shipping, 333 F.3d 383, 392 (2d Cir. 2003) ("In construing an arbitral award we look to only plausible readings of the award, and not to probable readings of it. Even absent a plausible reading free of error, we would confirm the award if we independently found legal grounds to do so."). We have also stated, however, that in some limited circumstances, arbitration awards may be remanded "so that the court will know exactly what it is being asked to enforce." American Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64,

22

67 (2d Cir. 1985). I believe remand is appropriate here because this case presents such "limited circumstances."

Here, the arbitration panel heard testimony with respect to securities losses sustained by the Riches. Due to an intervening class action settlement, some of those losses became ineligible for arbitration. The arbitration panel acknowledged this fact, and even indicated an intent to award for both the eligible and ineligible losses and to leave it to the District Court to void the award as it pertained to ineligible losses. However, in issuing the Award, the panel failed to specify the amount awarded for eligible losses versus the amount awarded for ineligible losses. Accordingly, the District Court was faced with an award that it could not enforce without further information. See id.; see also New York Bus Tours, Inc. v. Kheel, 864 F.2d 9, 12 (2d Cir.1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance."). Given the unique facts of this case, I agree with the majority that remand in order to direct the arbitration panel to provide a breakdown of its award is the proper course of action.

I also emphasize that in ordering a remand here, we do not require the arbitrators to state the reasons for their award, but only to state the precise amount of the award attributable to WorldCom losses as well as the precise amount of the award attributable to non-WorldCom losses. We in no way intend to

23

preclude the panel from answering that the award was intended to compensate solely for WorldCom losses or solely for non-WorldCom losses. "A remand for clarification in such circumstances would not improperly require arbitrators to reveal their reasons, but would instead simply require them to fulfill their obligation to explain the award sufficiently to permit effective judicial review." Siegel v. Titan Indus. Corp., 779 F.2d 891, 894 (2d Cir. 1985). "Such a limited review of an arbitrator's award is necessary if arbitration is to serve as a quick, inexpensive and informal means of private dispute resolution." Id. (internal quotation marks and citation omitted). Remand for the limited purpose of asking the arbitration panel to provide a breakdown of the award will ensure that the District Court "will know exactly what it is being asked to enforce." American Ins. Co., 774 F.2d at 67.

Accordingly, I concur in the judgment.