Connect-Care, LLC v. The Echo Group  CV-03-040-JD  10/15/03
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Connect-Care, LLC

        v.                                Civil No. 03-40-JD
                                          Opinion No. 2003 DNH 175
The Echo Group


                              O R D E R


     Following an arbitration decision awarding damages to

Connect-Care, LLC, The Echo Group brought an action challenging

the decision in state court.  Connect-Care brought an action in

this court to confirm the award and removed Echo's state court

action to this court.  Those cases are now consolidated here.

Connect-Care moves for summary judgment to confirm the

arbitrator's decision, which Echo opposes.


                            Background

     Connect-Care is a company located in Alpharetta, Georgia,

that develops, implements, and services customer relationship

management software.[1]  Echo is a software company, located in

Conway, New Hampshire.  During the summer of 2000, Echo began to

shop for a software system to keep track of its customer

---

     [1]Connect-Care was known as ProAmerica Systems, LLC. during
its dealings with Echo.  To avoid confusion, the court will refer
to Connect-Care, rather than ProAmerica Systems.

information and to perform certain customer operations.

On September 29, 2000, Connect-Care and Echo entered into three separate agreements: a software license agreement, a professional services agreement, and a software support agreement. Schedule B of the license agreement provides the fee and payment part of the agreement for the software licenses, services, and maintenance. The total fee listed was $138,675, of which Echo paid all but the last payment of $34,670. The license agreement and services agreement had arbitration clauses. The support agreement did not have an arbitration clause.

After their relationship broke down, Connect-Care filed a demand for arbitration on February 12, 2002. Connect-Care claimed Echo had breached the license agreement and sought payment of $103,383.26, along with attorneys' fees, costs, and interest. Echo filed its answer on June 4, 2002, denying that it had breached the "software agreement," asserting a counterclaim that Connect-Care breached "the Agreement," and demanding $122,285.69, in refund of the fees it had paid to Connect-Care. Echo's answer and counterclaim do not specify which agreement, of the three, is at issue.

The arbitrator held a hearing in late September of 2002. In the course of the hearing, the parties indicated that they intended to submit all three agreements for arbitration, although

2

the support agreement did not have an arbitration clause. The arbitration case manager sent a letter on September 27, 2002, which noted the parties' intent to submit the services and support agreements for arbitration, along with the license agreement, and directed them to "file with the AAA the necessary request to do so." In response, Connect-Care filed an amended claim on October 17, 2002, in which it repeated its claim of breach of the license agreement but also appended copies of the services and support agreements, along with the license agreement.

On October 25, 2002, the case manager again wrote to the parties concerning the scope of the proceeding. The case manager reported that the arbitrator had noted that Connect-Care's amended demand for arbitration did not submit claims under all of the agreements. Connect-Care was directed to file a second amended demand "specifying that the claim is brought under two written contracts containing an arbitration agreement (the ProAmerica Systems, LLC Software License Agreement dated September 29, 2000 and the ProAmerica Systems, LLC Professional Services Agreement dated September 29, 2000)." As to the support agreement, which lacked an arbitration clause, the case manager stated the following: "Pursuant to their oral agreement referenced above the parties should file with the American

3

Arbitration Association a written submission to arbitrate any and all claims arising under the software support agreement, in accordance with Commercial Dispute Resolution Procedures R-5." On November 1, 2002, Connect-Care filed a second amended demand for arbitration, stating that the claim was brought under the license agreement and the services agreement. Neither party complied with the AAA requirements to submit the support agreement to arbitration. Echo did not file an amended answer or amended counterclaim.

In its brief submitted to the arbitrator, Connect-Care stated that the primary issue was its claim that Echo breached the license agreement. Connect-Care also argued that Echo acted in bad faith. Echo stated in its brief that Connect-Care had amended its demand for arbitration to include claims under both the services and support agreements. Echo asserted that it did not breach the parties' agreements but instead that Connect-Care breached the agreements. Echo relied in part on the support agreement.

The arbitrator issued his decision on December 12, 2002. In his decision, the arbitrator explained that the parties had agreed that the relevant documents were the license, services, and support agreements. He noted that Connect-Care sought relief under the license and services agreements only and that counsel

4

for Echo had not disputed those agreements as the bases for the demand for arbitration. The arbitrator explained the scope of his decision as follows:

> Accordingly, my award and rulings are intended to dispose of all claims arising under the License Agreement and the Services Agreement. Claims arising under the Support Agreement, if any, are not comprehended in the original or the Second Amended Demand and my award and ruling is not intended to dispose of such claims, if any. I specifically rule that the Support Agreement, although referenced in the License Agreement at section 3.3, is a separate agreement that is excluded from the License Agreement by section 14.9 of the License Agreement as well as by its own terms (see section 7.1), that does not include an arbitration provision, and that is not a basis for any claim in this proceeding.

The arbitrator found that Connect-Care did not breach any obligation under the license agreement and was entitled to an award of the fees owed. The arbitrator found that Connect-Care was also entitled to an award of attorneys' fees and costs, along with interest on the amounts owed. The arbitrator denied Echo's motion for a modification of the award. On January 29, 2003, the arbitrator awarded $103,383.26 as breach of contract damages, along with attorneys' fees, expenses, interest, an interest per diem amount, and an estimated confirmation cost. The arbitrator also calculated the administrative fees and expenses for the proceeding and ordered Echo to pay Connect-Care that amount.

5

Echo contends that the award should be vacated or modified because the arbitrator improperly failed to consider Echo's defenses and counterclaim under the support agreement but awarded damages to Connect-Care under that agreement. Connect-Care moves for summary judgment to confirm the award. Echo argues that material factual issues preclude summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Judicial review of [an] arbitrator's decision is extremely narrow and exceedingly deferential." Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2001) (internal quotation marks omitted). The court must confirm an arbitration award "if it is in any way plausible, even if [the court] think[s] [the arbitrator] committed serious error." Id. (internal quotation marks omitted).

Because the parties have agreed to accept the arbitrator's interpretation of their contract and the applicable facts, his decision controls as long as "the arbitrator is even arguably construing or applying the contract and acting within the scope

6

of his authority." <u>Bull HN Info. Sys., Inc. v. Hutson</u>, 229 F.3d 321, 330 (1st Cir. 2000). Echo invokes the statutory exceptions which allow a court to vacate an arbitrator's decision "where the arbitrator[] [was] guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy . . . or where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(3) & (4). Echo also contends, pursuant to 9 U.S.C. § 11(b), that the award should be vacated or modified because it was based on the support agreement, a matter that the arbitrator ruled was not within the scope of the proceeding.

It is undisputed that counsel for the parties agreed that all three agreements would be submitted for arbitration. Connect-Care presented its demand under only two of those agreements, however: the license agreement and the services agreement. Although the case manager reminded the parties that the support agreement was not part of the demand and that it did not have an arbitration clause, Echo did not clarify its intent to proceed under the support agreement.[2] More importantly, it is

---

[2]Echo's counterclaim does not specify which agreement Echo asserts was breached, and Echo never amended nor sought leave to amend the counterclaim.

undisputed that Echo did not file a written submission with the AAA for permission to arbitrate claims under the support agreement, despite the directive from the case manager to do so.

Based on these circumstances, Connect-Care did not bring a claim under the support agreement, and Echo did not properly present its claim under the support agreement. Therefore, the arbitrator correctly ruled that no claim under the support agreement was before him.

Echo also contends that the arbitrator awarded damages for maintenance fees under the support agreement because Schedule B of the license agreement includes fees for maintenance. In the statement of the award, the arbitrator found no breach of the license agreement and ruled that Connect-Care was entitled to an award of the fees owed by Echo under that agreement. Schedule B of the license agreement states the "License, Services and Maintenance Fees." Although the maintenance fees in Schedule B apparently relate to services performed under the support agreement, the payment provision is part of the license agreement. While more than one interpretation of the agreement package might be possible, the arbitrator construed the license agreement to obligate Echo to pay the fees demanded by Connect-Care, including the maintenance fees, as part of the license agreement. That is a plausible interpretation of the agreement.

8

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 10) is granted. The arbitration award is confirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                      _____
Joseph A. DiClerico, Jr.
United States District Judge

October 15, 2003

cc:  Roy S. McCandless, Esquire
     Robert R. Lucic, Esquire