# United States Court of Appeals
## For the First Circuit

---

Nos. 01-1849, 01-1911

WONDERLAND GREYHOUND PARK, INC.; WESTWOOD GROUP, INC.,

Plaintiffs, Appellees/Cross-Appellants,

v.

AUTOTOTE SYSTEMS, INC., f/k/a AUTOTOTE LTD.,

Defendant, Appellant/Cross-Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

David M. Olasov with whom Baer Marks & Upham LLP, Scott A. Roberts, A. Lauren Carpenter, and Sullivan, Weinstein & McQuay, P.C. were on brief for appellant/cross-appellee.
Kevin M. Considine with whom James W. Stetson was on brief for appellees/cross-appellants.

December 19, 2001

**LYNCH, <u>Circuit Judge</u>**.  This case comes to us on cross appeals from the district court opinion vacating an arbitral award as manifestly in disregard of the law.  On August 28, 2000, Wonderland Greyhound Park, Inc. and Westwood Group, Inc. (collectively, "Wonderland") had been ordered by the arbitrator to pay Autotote Systems, Inc. $456,043.84 due on a million dollars advanced by Autotote to Wonderland in 1992.  The arbitrator had, however, also found that Autotote was in violation of a divisible contractual obligation to provide Wonderland with some additional equipment, which thereby permitted Wonderland to terminate the contract.  The district court found these two conclusions to be internally inconsistent and so vacated the award and remanded to the arbitrator for proceedings consistent with its opinion.  <u>Wonderland Greyhound Park, Inc.</u> v. <u>Autotote Sys., Inc.</u>, 144 F. Supp. 2d 25, 29 (D. Mass. 2001).  Autotote appeals from that decision.  Wonderland

-2-

appeals the district court's decision to remand the case to the arbitrator.[1]

Our review of the district court's ruling on an arbitration award is de novo. Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000). Judicial review of the arbitrator's decision is "extremely narrow and exceedingly deferential." Id. (quoting Wheelabrator Envirotech Operating Servs. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996)). An arbitrator's award must be enforced "if it is in any way plausible, even if we think [he] committed serious error." Gupta v. Cisco Sys., Inc., No. 01-1122, 2001 WL 1504671, at *2 (1st Cir. Dec. 3, 2001). A court may only vacate an arbitrator's award in very rare circumstances, such as where there was misconduct by the arbitrator, where the arbitrator exceeded the scope of his arbitral authority, or when the award was made in manifest disregard of the law. Bull HN Info. Sys. Inc., 229 F.3d at 330-31; see 9 U.S.C. § 10 (2000). Although the district court articulated the appropriate standard of review, we believe it misunderstood the arbitrator's opinion and

---

[1] Our disposition of this case makes this cross-appeal irrelevant.

accordingly did not properly apply the principles.  The arbitrator's opinion was far from being in manifest disregard of the law and the district court was required to affirm it.

We start with a preliminary argument made by Wonderland.  Wonderland says that the arbitral award exceeded the arbitrator's authority as to remedy, even if the arbitrator was correct that the contract was divisible.  However, the arbitral clause in the agreement contains no limitations whatsoever on the arbitrator's power, but simply requires the parties to arbitrate all grievances between them:

> Any controversy or claim not settled by the parties arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgement upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Wonderland's argument is based entirely on clauses within the contract as to remedies for breach of contract.  One clause states:

> In the event that [Wonderland] shall default in the performance of any provisions of this Agreement on its part to be performed . . . and such default shall not be cured within a period of ten (10) days after notice shall have been given by AUTOTOTE to [Wonderland] specifying such default, then AUTOTOTE may terminate this Agreement by delivering to [Wonderland] written

notice of such termination prior to the expiration of thirty (30) days after the expiration of said ten (10) day period; and in the event of any such termination AUTOTOTE shall remove its personnel, materials and equipment from the RACETRACK, and the cost of such removal shall be paid for by [Wonderland].

There is an identical clause for when Autotote defaults in the performance of the contract. There is also a clause in the contract that states:

The remedies expressly provided in this Agreement for breach thereof by AUTOTOTE or [Wonderland] shall constitute the sole and exclusive remedies to the aggrieved party, and all other remedies which might be otherwise available under the law of any jurisdiction are hereby waived by both AUTOTOTE and [Wonderland].

It was within the province of the arbitrator to construe the contract, including these remedial provisions, in the first instance. Id. at 330 ("[I]t is the arbitrator's view . . . of the meaning of the contract that [the parties] have agreed to accept.") (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987)). Accordingly, it was within the power of the arbitrator to conclude that the contractual remedial clause here did not limit the remedy for Wonderland's failure to meet its installment repayment obligation. The arbitrator did not exceed the scope of his arbitral authority and the award can therefore only be

challenged for manifest disregard of the law.  An award is in manifest disregard of the law if either "the award is contrary to the plain language of the contract," or "it is clear from the record that the arbitrator recognized the applicable law, but ignored it."  Gupta, 2001 WL 1504671, at *2.

To understand why the arbitral award, which the district court found to be internally inconsistent, is neither inconsistent nor in manifest disregard of the law, it is necessary to review some of the factual determinations made by the arbitrator.  An arbitrator's factual findings are generally "not open to judicial challenge," El Dorado Technical Servs., Inc. v. Union General De Trabajadores De Puerto Rico, 961 F.2d 317, 320 (1st Cir. 1992), and "[w]e accept the facts as the arbitrator found them."  Boston Med. Ctr. v. Serv. Employees Int'l Union, Local 285, 260 F.3d 16, 18 (1st Cir. 2001).

Autotote is a provider of pari-mutuel wagering totalizer machines and services.[2]  In 1991 it entered into a contract with Wonderland, a greyhound race track.  In 1992

---

[2]     A totalizer machine, also known as a totalisator machine or tote machine, is a machine that registers bets and divides the total amount bet among those who won.

Wonderland asked Autotote for a one million dollar loan. As part of the consideration for this loan, the 1991 contract was extended to 1997, and Wonderland agreed that it would repay the million dollar loan at the rate of $4,944.08 weekly, totaling $257,092.16 annually. Autotote in fact forwarded Wonderland the million dollars as agreed. In addition, Autotote provided totalizer services to Wonderland and was entitled to fees for these services. In 1993, Autotote made another advance of $325,000 to Wonderland.

In 1995 the parties executed an extension of the 1991 contract, which further extended the contract to 1998, and Wonderland reaffirmed its burden to pay weekly installments of $4,944, above and beyond the weekly payment of fees for totalizer services. Wonderland did not in fact pay for all of the totalizer services and there is a stipulation that the sum owed on that account was $21,747.

In 1999, the parties again extended their contract. This extended the contract retroactively from 1998 for a seven-year term. This amendment reduced the installment payments due to Autotote from weekly payments of $4,944.08 to weekly payments of $1,373.63 for a seven-year period, for a total sum of

$500,000. The 1999 amendment also required Autotote to supply Wonderland with a specified array of new equipment, including hardware and software. The arbitrator found that Autotote had failed to supply the new equipment and that this failure was a material breach of that portion of the 1991 contract as extended and amended in 1999. That breach, according to the arbitrator, justified Wonderland in terminating the contract. The question then became whether the termination of the contract excused Wonderland from repaying the monies advanced to it earlier by Autotote.

The arbitrator found that while Autotote's failure to provide the new equipment justified Wonderland's termination of the contract, that did not absolve Wonderland from liability to Autotote for the weekly fee of $1,373.63 for the seven-year term, for a total payment of $500,000. The arbitrator found that Autotote had fulfilled its obligation in 1992 to provide a million dollars and that it was entitled to the benefit of the bargain as renegotiated in 1999 with respect to the installment payment contract. The arbitrator found that the contract was divisible and that the effect of the termination was to mature Autotote's executory rights for a total payment of $500,000,

less the installments paid.  The arbitrator found that only 32 payments of $1,373.63 had been made, thus entitling Autotote to an award of $456,043.84 for that portion of the contract.

On those facts, the arbitrator's award cannot be said to be in manifest disregard of the law.  While the arbitrator did not use the specific magic words that Wonderland was "in breach" of the divisible obligation with respect to the installment payment stream, he did find that Wonderland failed to make installment payments and he rejected the reasons given by Wonderland to excuse its non-payment.  This is sufficient to establish breach of contract.

As to the acceleration of payments, we have already disposed of the argument that the arbitrator was limited in his remedies.  In fact, Autotote had loaned Wonderland a million dollars in 1992.  There was an agreement to repay the loan on an installment basis, but very few payments had been made over the years.  The arbitrator's decision that the payments long overdue should now be paid in full cannot be said to be in manifest disregard of the law.

Accordingly, we vacate the judgment and remand to the district court with instructions to enter an order enforcing the arbitral award in full.[3]  Costs are awarded to Autotote.

_____

[3]     This includes the award to Autotote of the stipulated sum of $21,747 for totalizer services fee arrearages due from Wonderland, which was inexplicably omitted from the district court's order.